[Civ. No. 765.   Third Appellate District.—March 23, 1911.]

# G. CORDANO et al., Appellants, v. G. B. FERRETTI et al., Respondents.

SPECIFIC PERFORMANCE—PAROL CONTRACT FOR REAL AND PERSONAL PROPERTY—NURSING OF INVALID WIFE BY DAUGHTER—MONEY VALUE—FINDINGS—SUPPORT OF JUDGMENT.—It is held that a parol contract by a husband to convey real and personal property to a married daughter upon the death of her invalid and paralyzed mother, in consideration of her taking her mother into her own home and giving her support, medical attendance, nursing and care until her death, cannot be specifically enforced, where findings, sustained by the evidence, show that the husband thereafter assisted in the care of his wife, and paid for part of the drugs, medical attendance and provisions, that the services of the daughter were the ordinary services of nursing and attendance upon her invalid mother, that in performing the same there was no change of residence, circumstance, conditions or domestic life of the daughter and her husband, and that the services were readily estimated in money value.   Such findings support the judgment for the defendants.

ID.—FULL PERFORMANCE ESSENTIAL TO RELIEF.—The foundation of the claim by the daughter and her husband, as appellants, necessarily rests upon a full compliance of the daughter with all of the terms of the contract, and a failure in that respect, in any important particular, is sufficient to defeat the action.

ID.—STATUTE OF FRAUDS—PART PERFORMANCE INSUFFICIENT.—The parol contract being within the statute of frauds, no part performance consisting of payment of the purchase price or the rendition of services is sufficient to relieve the contract from the operation of the statute.

ID.—IMPOSSIBILITY OF PECUNIARY ESTIMATE OF VALUE ESSENTIAL.—To make the contract enforceable, the services must be of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it must also be evident that the parties did not intend to measure them by any such standard; and that plaintiff cannot be restored to her situation before the rendition of the services.

ID.—DISCRETION OF CHANCELLOR.—The question whether relief should be granted or denied in an action for specific performance, in a particular case, addresses itself peculiarly to the conscience of the chancellor, and many considerations are to be weighed before a plaintiff entitles himself to such relief.

ID.—ABSENCE OF EXTRAORDINARY CIRCUMSTANCES.—It is held that in this case there is the absence of any extraordinary circumstances

that would leave no discretion in the trial court to refuse a specific performance, and that it cannot be said that the services rendered cannot be measured by a pecuniary standard, or that the daughter and her husband cannot be restored to the position in which they were before the services were performed, and that the decision must be upheld upon the merits of the case.

ID.—AWARD OF COMPENSATION—ABSENCE OF ISSUE—AFFIRMANCE OF JUDGMENT.—When no issue was presented by the plaintiff on which the court denying a specific performance could have awarded compensation to the plaintiff, and no error appears in the record, there is no ground for reversal of the judgment to award such relief; and there is no course open but to affirm the judgment for the defendants.

APPEAL from a judgment of the Superior Court of Sonoma County. Thomas C. Denny, Judge.

The facts are stated in the opinion of the court.

T. J. Butts, for Appellant.

J. M. Thompson, and R. L. Thompson, for Respondents.

BURNETT, J.—The action was brought for the specific performance of a parol contract to convey real estate and personal property. The complaint alleges: ''That on or about the said 15th day of December, 1907, the said defendant G. B. Ferretti entered into contract and agreement with plaintiffs at and in Sonoma county, wherein and whereby the said G. B. Ferretti agreed to pay, transfer and assign to plaintiffs upon the death of said Victoria Ferretti one-half of all the community property of the said G. B. Ferretti and Victoria Ferretti, if the said plaintiffs would take the said Victoria Ferretti into their charge and keeping and provide her with all the necessaries of life and medical attendance, and give to her the care and attention that she needed in her helpless condition during the time of her natural life, and the said plaintiffs then and there agreed to and with the said G. B. Ferretti that in consideration of his paying, transferring and assigning to them the one-half of the said community property, that they would take the said Victoria Ferretti into their home and care for her and furnish to her all the necessaries of life and would give to her such care as her condition demanded. That the said plaintiffs did then and there take the said Victoria Fer-

retti into their house and did care for her and did furnish to her all the necessaries of life and did give to her such care and attention as was needed by her up to the time of her death, and that the said Victoria Ferretti died on the 22nd day of June, 1908.''

There is no dispute as to the facts included in the first three findings of the court to the effect that the said Victoria Ferretti, during the time mentioned in the complaint, resided with her husband, the said G. B. Ferretti, on the premises of plaintiffs in Sonoma county, that she was the mother of plaintiff, Kate Cordano, and was afflicted with paralysis and unable to care for herself; that in July, 1905, the said G. B. Ferretti and his wife, the said Victoria Ferretti, at the invitation of plaintiffs, came to said premises from their home in Alameda county, and thenceforth, until about November 1, 1907, resided in a house built by defendant, G. B. Ferretti, on the premises and near the dwelling-house of plaintiffs; that thereupon the plaintiff, Kate Cordano, voluntarily took her mother, the said Victoria Ferretti, into plaintiff's dwelling-house and assisted in nursing and caring for the said Victoria Ferretti until the latter's death as aforesaid.

The court further finds that, on December 15, 1907, the defendant, G. B. Ferretti, made the oral agreement set out in plaintiffs' complaint. Appellants, of course, do not, and respondents cannot, assail this finding.

The whole controversy hinges upon the following findings: "5. That during all of said time up to the death of his wife, G. B. Ferretti assisted in the care of his said wife and furnished and paid for part of the drugs and medical attention and provisions consumed by her. 6. That the said services so performed by plaintiff Cordano were the ordinary services of nursing and attending to a sick person in a condition such as that of the said Victoria Ferretti. But that in the performance of said services there was no change of residence, circumstances, conditions or domestic life on the part of plaintiffs, and the position of plaintiffs was not changed and that said services were not impossible nor difficult to estimate the value of in money, but could be and were readily computed and estimated in money value.''

Both of these findings, in our opinion, are amply supported by the evidence, and they in turn warrant the judgment of the court in favor of defendants.

The foundation of the claim of appellants necessarily rests in a compliance upon their part with all the terms of the contract, and a failure in that respect in any important particular is sufficient to defeat the action. However, following the lead of counsel, the view by the trial court of the contract as embodied in said finding 6 may be considered of paramount importance and entitled to more extended consideration. The principles applicable to the situation are simple and easily ascertainable. They have been under review in many decisions of the courts. We, probably, though, need not go beyond the case of *Owens* v. *McNally*, 113 Cal. 444, [45 Pac. 710, 33 L. R. A. 369]. Therein the contract related to a testamentary disposition of property, but, admittedly, the character of such a contract is substantially the same as the one before us, and there is no material difference between the conditions prerequisite to the specific enforcement of the one and of the other. In that case, as in this, the contract, being in parol, was within the statute of frauds, and the court, after a comprehensive review of the authorities, declares that "it is the generally accepted rule that the payment of the purchase price or the rendition of services is not such a part performance of a parol agreement as will relieve the contract from the operation of the statute." To make the contract enforceable, it is further held that the services must be of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, it must also be evident that the parties did not intend to measure them by any such standard, and it must appear after the performance of the services that plaintiff cannot be restored to the situation in which he was before the rendition of the services. It is further declared that "the question whether relief should be granted or denied in a particular case addresses itself peculiarly to the conscience of the chancellor, and before a plaintiff entitles himself to it many considerations enter and are to be weighed."

We can see none of those peculiar and extraordinary circumstances present in the case at bar that would leave no discretion in the trial court but to decree specific performance. It may be admitted that the care of the deceased was quite burdensome. She was helpless and in need of much attention, but any competent nurse could have performed the services that were required. It may have been a hardship for the

plaintiffs to have the old lady in their home. Some sacrifice was doubtless demanded of the daughter, but it is perhaps needless to say that such inconvenience and discomfort are a common incident of age and infirmity, and the task should have been, and no doubt was, alleviated by filial affection and devotion. At any rate, we cannot say that the services cannot be measured by a pecuniary standard, or that plaintiffs cannot be restored to the position in which they were before the services were performed.

The cases cited have invited and received examination, but further specific consideration of them is not deemed necessary, nor do we feel called upon to quote the testimony found in the record. Indeed, we probably would have been justified in declining to examine the testimony to ascertain whether it is sufficient to support the findings, for the reason that the appeal was not taken within sixty days after the entry of the judgment. The judgment was filed and entered October 7, 1909. The notice of such filing and entry were served October 8, 1909. Notice of appeal was served and filed by appellants December 8, 1909, sixty-one days after the service of said notice of filing and entry of judgment and sixty-two days after the entry of judgment. Section 939, subdivision 1, of the Code of Civil Procedure provides that "An exception to the decision, or verdict, on the ground that it is not supported by the evidence, cannot be reviewed on an appeal from the judgment, unless the appeal is taken within sixty days after the entry of the judgment."

The only answer by appellants to this point is "that there is nothing in the bill of exceptions or judgment-roll that shows that the appeal was taken more than sixty days after notice. There is a paper printed in the back of the transcript which purports to be a notice of judgment, but it is not authenticated by the certificate of the clerk or of the judge and cannot be considered on this appeal." There is, however, a stipulation signed by the attorneys that the papers contained in the transcript "are true and correct copies of the original papers on file in said action." This ought to be sufficient authentication. But, regardless of this contention, we are satisfied that the decision must be upheld upon the merits of the case.

For the first time, in their closing brief, appellants claim that if the court was right in finding that the case is one in

which compensation could be made in money, then the court should have found the amount that would compensate them and award them that sum and not turn them out of court destitute of any relief. In support thereof appellants cite *Miller* v. *Edison Electric Illuminating Co.*, 184 N. Y. 17, [76 N. E. 734, 3 L. R. A., N. S., 1060], *Hurlbutt* v. *N. W. Spaulding Saw Co.*, 93 Cal. 55, [28 Pac. 795], and *Zellerbach* v. *Allenberg*, 99 Cal. 57, [33 Pac. 786]. These are all to the effect that when equity has taken jurisdiction of a case, it will endeavor to do complete justice between the parties and award whatever relief the evidence justifies, if within the issues, though not specifically prayed for. To save expense and avoid unnecessary litigation, the rule, of course, should be observed. The difficulty here is, however, that there is no issue as to the value of the services actually performed by plaintiffs. It is true that there is an allegation in the answer that ''the reasonable value of said services, including all care and attention, necessaries furnished and medical attendance, would not exceed the sum of $300,'' but this includes services rendered and paid for by defendant G. B. Ferretti, as found by the court. Besides, it may be that the trial judge believed that the plaintiffs had been compensated for their services. There is some evidence to that effect in the transcript. At any rate, no doubt, the court below would have been disposed to award whatever compensation it deemed plaintiffs entitled to if the matter had been properly presented. As it stands here, seeing no prejudicial error in the record, we think there is no course open to us but to affirm the judgment, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.