SWORD *v.* AIRD.

1. DEEDS—CONSTRUCTION—CONDITION PRECEDENT.
   Deed under which plaintiffs claim title to property *held*, to contain an express condition it was not to be effective unless plaintiff grantees complied with provision contained therein to support and maintain grantor for remainder of his life rather than a conveyance of the property in which grantor reserved a life interest as found by trial court.

2. EVIDENCE—DESTRUCTION OF INSTRUMENTS—FINDINGS OF COURT.
   Defendant who executed deed of realty and bill of sale of a boat, which instruments were placed in a strong box accessible to all parties in home occupied by them, and who took the writings from the box and destroyed them may not complain

---

Adequacy of remedy at law as affecting relief by way of specific performance, see 2 Restatement, Contracts, § 358, subd. 1, comment d.

Adequacy of damages as affecting mutuality of remedy, see 2 Restatement, Contracts, § 372.

Specific performance where personal services required, see 2 Restatement, Contracts, § 379, illustration 4.

A plaintiff who submits to a nonsuit either voluntarily or at direction of the court, or if his action is dismissed without prejudice, is not barred from maintaining an action on the original cause of action, see Restatement, Judgments, § 53.

of findings of the trial court as to the contents of such writings but for admissions of plaintiff grantees in their pleadings and testimony.

3. EQUITY—BILL OF PARTICULARS—VALUE OF PERSONAL SERVICES— ADEQUATE REMEDY AT LAW.

By filing bill of particulars showing claimed value of services rendered defendant who is alleged to have executed a warranty deed of a house and lot and bill of sale of a boat to plaintiffs, they clearly indicated having a complete and adequate remedy at law.

4. CONTRACTS—PERSONAL SERVICE—ASSIGNMENT—SPECIFIC PERFORMANCE—REMEDY AT LAW.

Contracts of a personal nature, contemplating personal association and continuing service, are not assignable and during the lifetime of the parties will not be decreed to be specifically enforced but the parties will be left to remedy at law wherein defendant has a right to trial by jury.

5. SAME—PERSONAL SERVICE—SPECIFIC PERFORMANCE.

Contracts for affirmative personal service consisting of a succession of acts, the performance of which cannot be consummated in one transaction, but must continue for a time, definite or to become definite, and which involve special knowledge, skill, judgment, integrity, or other like personal qualities, the performance of which rests in the individual will and ability, and involving continuing duties which a court of equity could not well regulate, are not, as a rule, enforceable by decree for specific performance.

6. SPECIFIC PERFORMANCE—CONTRACTS OF PERSONAL NATURE—MUTUALITY OF REMEDY.

Specific performance of contracts of a personal nature is denied for want of mutuality of remedy.

7. SAME—MUTUALITY OF REMEDY—EXECUTORY CONTRACTS.

The doctrine of mutuality of remedies applies only to executory contracts and not to executed contracts.

8. SAME—PREVENTION OF FULL PERFORMANCE—SUBSTANTIAL PERFORMANCE—ORAL CONTRACTS.

Specific performance of an oral contract to convey land and title of boat to plaintiffs in return for their support and maintenance of defendant, not fully performed by either party, will not be granted where full performance has been prevented by one party notwithstanding there has been substantial performance by the other party.

9. EQUITY—SPECIFIC PERFORMANCE—PART PERFORMANCE—REMEDY
  AT LAW.
    Bill for specific performance of oral agreement to convey land
      and title of boat to plaintiffs in return for their support and
      maintenance of plaintiff is dismissed without prejudice to
      plaintiffs' right to obtain such relief as they may be able
      to get in an action at law, where they have rendered sub-
      stantial performance.

Appeal from Wayne; Gilbert (Parm C.), J., pre-
siding. Submitted March 22, 1943. (Docket No. 81,
Calendar No. 42,061.)   Decided June 7, 1943.

Bill by John Sword and wife against James Aird
to require delivery of deed and bill of sale, for an
accounting, an injunction, and to establish the va-
lidity of a trust 'agreement. Decree for plaintiffs.
Defendant appeals. Reversed.

*Wm. L. Thorp,* for plaintiff.

*Arnold F. Zeleznik,* for defendant.

CHANDLER, J.   This appeal is from a decree of the
trial court entered May 27, 1941, requiring defend-
ant to pay to plaintiffs, within 30 days from the date
thereof, the sum of $2,275, and providing if not so
paid

"that the above-named defendant, James Aird,
shall forthwith execute and deliver to Wm. L.
Thorp, attorney for the plaintiffs, a good and suffi-
cient warranty deed of conveyance to the house and
lot and contents, located at 25 Broadway avenue,
Ecorse, Wayne county, Michigan, and described as:
    "Land situated in the village of Ecorse, Wayne
county, Michigan, lot #63 of Welch Brothers'
Riverside Park subdivision
free and clear from any and all incumbrances what-
soever, to John Sword and Oma Sword, his wife,

the above-named plaintiffs and that if this provision of the decree is not complied with on the part of the defendant, the plaintiffs shall file a true copy of this decree with the office of the register of deeds for Wayne county, Michigan, in its place and stead; it is further

"Ordered, adjudged and decreed that the above-named defendant, James Aird, shall forthwith execute to the plaintiffs, a bill of sale to an undivided one-half interest in the boat described in the plaintiffs' bill of complaint and that upon the death of the above-named defendant, the plaintiffs shall be the absolute and sole owners of the same and that in lieu thereof, this decree shall operate in its place and stead."

The decision and opinion of the trial court was made a part of the decree by reference. Deeming the findings of importance, in view of our conclusions, we quote the same in full:

"Without discussing the facts too much in detail, the court is of the opinion that the plaintiffs in this cause are entitled to some relief, and among the reasons are the following:

"First, that it is satisfactorily proven that the parties agreed upon an arrangement whereby plaintiffs should care for and assist the defendant, all living together in the same home, which arrangement was to continue through the lifetime of the defendant, and in consideration whereof defendant agreed to convey to plaintiffs the real estate and home now occupied by them, at number 25 Broadway, in Ecorse, Wayne county, Michigan; that on January 29, 1939, a deed was executed by defendant conveying this real estate to the plaintiffs, which deed was delivered to plaintiffs, placed and retained in their possession, and its delivery, among other things, accompanied by a statement on the part of the defendant that now the home belonged to plaintiffs and they could go ahead and inprove it as such.

"There was also a bill of sale of a certain boat executed by defendant in favor of the plaintiffs, the exact contents of which bill of sale are not clearly shown, but in substance the testimony indicates that plaintiffs were granted an undivided one-half interest in the boat and were to become the owners of it upon the death of the defendant.

"There was also some talk between the parties, and the defendant referred to the same on the trial, that he had stated he would set up a trust fund of $1,000 for one of the minor children of the plaintiffs. The court is of the opinion that the discussion relative to the trust fund did not take such form as to be an enforceable claim on behalf of the plaintiffs. In other words, it was, rather, a promise the defendant made to the family, but at the same time was not a moving item relative to the plaintiffs' taking care of and providing a home for him; and the court does not regard that item as enforceable in this action and on the present record.

"The plaintiffs are entitled to a decree vesting the title of the real-estate property at 25 Broadway, Ecorse, in them, and to an undivided one-half interest in the boat in question.

"The testimony shows that defendant vacated and left the home of plaintiffs without any cause; that he clandestinely and unlawfully destroyed the documents executed by himself and delivered to plaintiffs, conveying the real estate and the boat to them; that he left the home and breached the entire arrangement, without any cause or justification.

"It seems doubtful whether the defendant can be induced to remain in the home of plaintiffs or whether the parties could, in fact, live together peaceably and comfortably after the development of the present situation, and particularly due to the disposition and evident frequent changes of mind of the defendant. It does not appear very practical to compel the defendant to go and live in that home, and the court is of the opinion that a

better solution is for the defendant to pay plaintiffs what the real estate is fairly worth.

"A decree may be entered for plaintiffs providing substantially as follows: That the defendant convey to the plaintiffs the property in question, as above mentioned, or in lieu thereof that he pay the plaintiffs the sum of $2,000 for the real estate and $200 for plaintiffs' interest in the boat. In other words, defendant is granted the option of paying these respective sums, if he so desires, rather than making a conveyance of the property. If such payment is not made by him within 30 days after entry of this decree, then title to the real estate and the undivided one-half interest in the boat shall be vested in the plaintiffs, and the decree may so provide."

From our review of the record, we are not convinced that the findings and conclusions of the trial court are supported by the pleadings and testimony.

Paragraph eight of plaintiffs' bill of complaint indicates their theory of the original agreement between plaintiffs and defendant at the time of filing said bill and reads as follows:

"That about 10 years ago the above-named defendant agreed to and with the above-named plaintiffs that if the above-named plaintiffs would administer to his, the defendant's, comfort; assist him in the management of his home, business and real-estate affairs; assist him with the work around his, at that time, home and keep the property up, that he, the defendant, would see that the plaintiffs were amply provided for and taken care of at his death. That acting under said arrangements, the plaintiffs did administer to his, the defendant's, comfort; took care of the home for him and assisted him in his business matters and kept up his property for a period of about nine years. That about one year ago, after the defendant's housekeeper died, the defendant reiterated his previous agreement and arrange-

ment with the above-named plaintiffs and further agreed that if he, the defendant, could live with the plaintiffs and if they would help support and maintain him; assist him in transporting himself around from place to place; manage his affairs and take care of his properties; administer to his comfort and help nurse him when necessary and in general, allow him to live with them and be a companion to him, then he, the said defendant, would will to the plaintiffs, a 25 per cent. interest in all of his estate and would deed to the plaintiffs, the property located at 25 Broadway street, Ecorse, Michigan, subject to a life estate.''

We deem paragraph 10 of the bill of complaint of importance as bearing upon what plaintiffs' claim with reference to the consideration for the agreement was at the time of the filing of the bill. It is as follows:

''That acting under said agreement, as mentioned above, a will was drafted, signed and executed by the above-named defendant, devising and bequeathing to them, the said plaintiffs, 25 per cent. of his estate which will was drafted and executed on or about the 22d day of April, 1939. That the defendant also drafted a warranty deed, deeding to the said plaintiffs, the property located at 25 Broadway avenue, Ecorse, Michigan, which warranty deed, subject to a life estate, was fully executed and delivered to the plaintiffs on January 29, 1940. That thereafter there was some question as to the legality of the deed in reference to the life estate and a new deed was executed on or about February 5, 1940, said deed was never recorded and said deed was placed in a safety box that the parties had hereto and which was located in their home and plaintiffs aver that said deed is in the possession of defendant.''

The original bill of complaint was filed July 8, 1940. On August 1, 1940, a motion to dismiss was

made which was denied by the trial court on August 7, 1940. On September 20, 1940, plaintiffs amended paragraph 10 of the bill to read as follows:

"That acting under said agreement, as mentioned above, a will was drafted, signed and executed by the above-named defendant, devising and bequeathing to them, the said plaintiffs, which in effect was a ¼ or a 25 per cent. interest of his estate as there would be four sets of devisees and legatees under said will which will was drafted and executed on or about the 22d day of April, 1939. That further, in pursuance of said agreement, which agreement had been fully performed on the part of the plaintiffs up to that time and on January 29, 1940, the above-named defendant executed and deeded, by warranty deed, to the plaintiffs, the property located at 25 Broadway avenue, Ecorse, Wayne county, Michigan, the legal description of which property is: 'Land situated in the village of Ecorse, Wayne county, Michigan and described as Lot No. 63, Welch Brothers' Riverside Park subdivision.' This particular deed had a reservation in the same that was put in shortly thereafter to the effect, that the plaintiffs were to care for the defendant for the rest of his life and that is the reason the expression, 'subject to a life estate' was used in said paragraph ten and in any other portion of said bill of complaint, which deed was delivered to the plaintiffs.

"That about a week later, and your plaintiffs have ascertained from the defendant's attorney that the date was February 5, 1940, the defendant, without the knowledge or consent of the plaintiffs, went to his attorney and had another deed to the same property made out which deed had a lot of restrictive covenants in and your plaintiffs refused to accept the same as they had accepted the prior deed and that in the meantime and before the February 5, 1940, deed came to the attention of your plaintiffs, the defendant's attorney gave the defendant a quitclaim deed to bring to the plaintiffs' home to

have them sign the property back to him, the defendant, which the plaintiffs refused to do."

It is to be noted that the decree of the trial court was based upon a finding that on January 29, 1940, a warranty deed was executed and delivered by defendant to plaintiffs conveying to them the real estate involved in this litigation.

It was the theory of the defendant, supported by quite convincing testimony on his part and that of his attorney, that on January 29th a deed was executed which contained a provision that the same was not to take effect until the death of the grantor, and that both the defendant and the plaintiff, John Sword, were advised by said attorney that this deed was testamentary in character and did not convey any present or future interest, except that, if not revoked, it would have the effect of a will. There was also testimony that when this instrument was delivered to plaintiff Sword it was with the agreement and understanding that it should not be recorded until after the death of the defendant.

The testimony on the part of the defendant and the attorney who prepared this instrument was to the effect that plaintiffs were not satisfied with this deed, and that later on February 5, 1940, another deed was prepared, containing an express agreement that the parties of the second part, the plaintiffs herein, should support, maintain, board and room, doctor and nurse the grantor, in a manner consistent with the grantor's station in life, for the remainder of his natural life, and that the grantor should have the exclusive use and occupancy of the property described therein for the period he desired during the remainder of his natural life; and that in case of a breach in any of the covenants or

conditions of the said deed by the grantees named therein the deed should become inoperative, null and void.

The testimony as to whether all of these conditions and provisions were in the February 5th deed, or as to whether there was any deed bearing date of February 5th, was very conflicting. However, the testimony of both plaintiffs in a large measure sustains defendant's contention that there were two deeds and that the latter deed contained a condition or restriction substantially as claimed by defendant. Plaintiff, John Sword, on cross-examination gave the following testimony:

"*Q.* Did he say anything about his desire to insure control during his lifetime?

"*A.* He told Bresnahan I was supposed to take care of him for the rest of his life. Mr. Bresnahan said, 'I would rather that the deed have something in there that they would take care of you for the rest of your life'.

"*Q.* Did he put something of that sort into that deed at that time?

"*A.* Yes, sir, the girl did.

"*Q.* Do you recall what that was?

"*A.* Yes, sir.

"*Q.* What was that?

"*A.* The girl put it into the typewriter. It said that 'Mr. and Mrs. Sword are to take care of Mr. Aird for the rest of his life.'

"*Q.* Anything else?

"*A.* That is all Mr. Aird would let him put in.

"*Q.* You are quite familiar with the contents of both of these deeds, deed number one and deed number two?

"*A.* *The Court:* Make that clear. I don't judge that deed number one was the first deed.

"*Q.* It was the deed prepared on or about

January 29, 1940.  Deed number two, speaking chronologically, is Exhibit 2 we have seen here, prepared on or about February 5, 1940?

"*A.*  Yes, sir."

Mrs. Sword testified:

"*Q.*  Did you have faith in Mr. Aird's promise to leave you the home?

"*A.*  Well, we hoped that he would leave it.  He had an agreement with us.  He always said his word was as good as gold.

"*Q.*  Did you believe that, or do you think that he had a right to change his mind?  Did you lose faith in him in so far as the promise that you claim he made back in 1930, was concerned?

"*A.*  At what time?

"*Q.*  At any time?  If you lost faith, what time did you lose it?

"*A.*  We lost our faith in his word when he put us out of High Street.

"*Q.*  When was that?

"*A.*  1937.

"*Q.*  Yet, notwithstanding that fact, in September of thereabouts, 1939, and before the deeds that you are claiming here were drawn, you moved back into another one of his homes, at 25 Broadway?

"*A.*  Yes, sir.

"*Q.*  Why did you do that?

"*A.*  Because he promised us to deed us the home.

"*Q.*  Did he say under what circumstances he would deed you the home at that time?

"*A.*  I don't get what you mean,—what I would do for him?

"*Q.*  Under what conditions he would deed the home to you?  Didn't you expect to do something for him?

"*A.*  He said he would deed us the home if we would care for him for the rest of his natural life.

"*Q.*  What were you to do with reference to that?

"*A.* We were to administer to his comfort and to transport him around. We did all of those things. * * *

"*Q.* You state that you are ready and willing to take care of the terms in the deed and take care of Mr. Aird for his natural life?

"*A.* Yes.

"*Q.* Do you think that is a satisfactory arrangement with Mr. Aird, in view of what has happened so far? * * *

"*A.* If I thought that he would be willing to live with us, we would agree to keep Mr. Aird in accordance with the agreement, and go on."

Mildred Nowland, a witness produced by plaintiffs, who claimed she saw the deed that was delivered by plaintiff Sword to his wife on January 29, 1940, testified on direct examination in rebuttal as follows:

"*Q.* All right. That is the reason I am calling you on rebuttal. Now, witness, just what writing did you see in that deed?

"*A.* Well, I can't express the exact words, but as near as I can, it seemed to me there was about one line, I would judge; it was to the effect that Mr. and Mrs. Sword was to take care of Mr. Aird for the rest of his life. That is as near to the words as I can express it.

"*Q.* And are you sure of that statement now?

"*A.* Oh, yes, I am."

We find that the testimony is conclusive that the deed or instrument under which the plaintiffs are claiming was not such an instrument as found by the trial court to have been delivered to plaintiffs, but that it contained the express condition that the deed was not to be effective unless the plaintiffs complied with the provision contained therein to support and maintain the defendant during the remainder of his life.

The record discloses that the written instruments executed by defendant, the so-called deed or deeds and the bill of sale of the speed boat, were placed by plaintiffs or one of them, after delivery, in a strong box in the home occupied by the parties. The box was the property of defendant, but plaintiffs were accorded the right to use it. In fact, all parties made use of it for the deposit of what they deemed important or valuable papers, and all had access to it at any time they desired. After the parties came to the parting of the ways, defendant took the writings from the box and destroyed them, and so, but for the admissions of plaintiffs in their pleadings and testimony, he would not be in a position to complain of the findings of the trial court as to the contents of said writings.

Plaintiffs filed with their pleadings a bill of particulars showing what they claimed to be the value of the services they had rendered defendant for about a 10-year period prior to the institution of this suit which amounted to $2,810. By this, they clearly indicated to this court that they have a complete and adequate remedy at law.

In the instant case, assuming that the contract was exactly as plaintiffs claim, it had not been completely executed, but was an executory one, and even if the appellant is responsible for its breach, the remedy of plaintiffs is in a court of law and not in a court of equity. The trial court by its findings in effect so determined, as is apparent and may be readily inferred from the next to the last paragraph of his opinion hereinbefore quoted.

We have passed directly on the question involved in *Woods* v. *Johnson,* 266 Mich. 172, where we said:

"The contract between the parties was one of a personal nature and contemplated personal associ-

ation and personal service. *Litka* v. *Wilcox*, 39 Mich. 94. Such contracts are not assignable. *Litka* v. *Wilcox, supra; Globe & Rutgers Fire Ins. Co.* v. *Jones*, 129 Mich. 664. Such contracts ordinarily during the lifetime of the parties will not be decreed to be specifically enforced but the parties will be left to their remedy at law.

" 'Contracts for affirmative personal service consisting of a succession of acts, the performance of which cannot be consummated in one transaction, but must continue for a time, definite or to become definite, and which involve special knowledge, skill, judgment, integrity, or other like personal qualities, the performance of which rests in the individual will and ability, and involving continuing duties which a court of equity could not well regulate, are not, as a rule, enforceable by decree for specific performance.' *Heth* v. *Smith*, 175 Mich. 328.

"The reason for denying specific performance in this class of contracts is the want of mutuality. The holdings in this State are in accordance with the general rule. 58 C. J. pp. 871, 872. The doctrine of mutuality of remedies applies only to executory contracts and not to executed contracts."

For breach of the oral and written contracts alleged by plaintiffs, their remedy is in an action at law wherein defendant should have a right to a trial by jury.

To paraphrase the language used in *Morten* v. *Zevalkink*, 304 Mich. 572, we might say that the original contract upon which plaintiff relies was an oral contract. There is no claim that this oral contract was fully performed by either party, nor do the facts justify a holding that it was partially performed by plaintiffs to such an extent as to justify an equity court in decreeing performance by defendant Aird. It is true that in some cases specific performance of somewhat similar contracts

has been decreed where, as in the instant case, full performance was prevented by one of the parties and there had been substantial performance by the other party. *Guzorek* v. *Williams*, 300 Mich. 633. But in the instant case there has not been anything like such a degree of performance by plaintiffs as would justify a court in decreeing specific performance by defendant Aird.

We find that the trial court was in error in the entry of the decree and that a decree should be entered dismissing the bill of complaint, but without prejudice to plaintiffs' right to obtain such relief, if any, as they can in an action at law.

The decree is reversed and one may be entered in accordance herewith, with costs of both courts to appellant.

BOYLES, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.