**MARTIN v. MARTIN.**

No. 12081.

Court of Civil Appeals of Texas.
San Antonio.

April 26, 1950.

Rehearing Denied May 24, 1950.

Walter C. Linden, Jr., Orange, David L. Tisinger, Austin, Sagebiel & Sagebiel, Fredericksburg, for appellant.

Julius F. Franki, Austin, Victor B. Rogers, Fredericksburg, Earl K. Adams, Austin, for appellee.

W. O. MURRAY, Justice.

This suit was instituted by Mrs. Frank J. Martin, the surviving wife of Judge Clarence Martin, Deceased, against Lela B. Martin, surviving wife of Tom Martin who died in 1948, seeking to remove cloud from title to her homestead located in Gillespie County, Texas, consisting of two hundred acres out of Survey No. 6, originally granted to Rachael Means and fully described in the pleadings, said cloud having been cast upon her homestead by the following provision contained in the will of her deceased son, Tom Martin: "I give and bequeath to my beloved wife, Lela B. Martin, all of my personal and real property. I also give to her 200 acres out of Rachael Means Survey in Gillespie County, Texas, said land being in the name of my mother, which she has given to me to become my own after her death. Upon this land my wife and I have spent many thousands of dollars for improvements and much of the money so spent was the separate property of my wife."

She also sought other relief not necessary to mention here.

Lela B. Martin answered contending, among other things, that plaintiff and her deceased husband entered into an agreement with defendant and her deceased husband in 1935, whereby they agreed to will or convey to defendant the above 200 acres in consideration of a promise on her part and her then husband, to support and care for plaintiff and her husband during the remainder of plaintiff's life. Defendant also claimed title to the 200 acres by reason of a deed executed by plaintiff in 1939 to defendant, conveying to her the said 200 acres.

The trial was to a jury upon thirty-four special issues, some of which the jury answered favorably to plaintiff and some favorably to defendant (cross-plaintiff). The trial court rendered judgment awarding to defendant (cross-plaintiff) the equitable title to the 200 acres here involved, and also awarded to defendant (cross-plaintiff) the possession, management, leasing and control of said land and premises and all of the produce, rentals, revenues and income therefrom, and provided further that Mrs. Frank J. Martin and Mrs. Lela B. Martin should have the equal right "to reside in, use and occupy the home or dwelling house on said premises." The judgment further orders and decrees "that Mrs. Lela B. Martin is obligated and bound and shall continue to care for, support and maintain Mrs. Frank J. Martin so long as the said Mrs. Frank J. Martin shall live; provided that should the said Mrs. Frank J. Martin elect to live elsewhere than upon said 200 acre tract, then, that while she shall so live elsewhere, said Mrs. Lela B. Martin shall pay to her the sum of $50 per month for her support and maintenance, and such sum shall be in full payment of her obligation therefor, except as to hospitalization, medical expense, or other expense connected with her care in event of sickness or disability requiring medical attention, for which said Mrs. Lela B. Martin shall be bound and obligated to pay the reasonable and necessary cost thereof over and above such sum provided for support and maintenance." There are other provisions of the judgment which were not appealed from and are not necessary to mention. From that judgment Mrs. Frank J. Martin has prosecuted this appeal.

Appellant's first contention is that this judgment, in effect, grants specific performance of the contract made in 1935, whereby appellee agreed to support and care for appellant during her lifetime and in consideration therefor, at her death, appellant would convey or devise the 200 acres to appellee, and that a contract of this nature is not one that may be ordered specifically performed by a court of equity during the lifetime of the promisor. We sustain this contention. Where, as in this case, the parents agreed to convey or devise their homestead to their son and his wife upon their death, in consideration of the son and wife agreeing to support and care for them during their lifetime, a court of equity cannot grant specific performance because of the want of mutuality of con-

sideration and remedy. If the situation were reversed and the promisor were suing the promisee for specific performance of this contract, it can readily be seen that a court of equity would not compel the promisee to perform services and care for the promisor during the remainder of promisor's life if promisee had refused to do so. Furthermore, no court of equity would require the promisor to live with promisee if their relations had ceased to be cordial and if life with the promisee had become intolerable. A court of equity simply does not have the means to enforce such a judgment. Such a court could not require the promisee to be kind and thoughtful and considerate of promisor, and in the absence of such things the contract should not be enforced. Furthermore, the promisor may outlive the promisee and in this manner it may become impossible for the promisee to carry out her contract, and also the promisee may become incapacitated to properly care for promisor and in this manner be prevented from carrying out the agreement.

In the case of Prusiecke v. Ramzinski, Tex.Civ.App., 81 S.W. 771, cited with approval in Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744, in discussing a contract in which the promisor had agreed to convey or devise certain real property to the promisee in consideration of certain personal services to be rendered by the promisee, the court said: "Even if the court could foresee that Prusiecki would outlive Ramzinski, it could not, by any power it possesses, or any process at its command, compel the former 'to support, house, and clothe Ramzinski as a member of his family during his natural life,' though 'at his death' it might compel Prusiecki 'to decently inter his remains.' But no one can say that Prusiecki would outlive Ramzinski, and, if he should not, it is needless to say that after his death he could not be compelled to support, house, and clothe Ramzinski, and upon his death decently inter his remains. But suppose the court did have such power, would its exercise subserve the ends of justice? Unless, as we have seen, the court is satisfied that it would, it would refuse to interfere.

That the exercise of such power might not subserve the ends of justice, but would be ruinous to Ramzinski, cannot be more aptly illustrated or demonstrated than is by Shakespeare in his King Lear." 81 S.W. 773.

We take the following from 7 A.L.R.2d p. 1172:

"Thus, in Poe v. Kemp (1921) 206 Ala. 228, 89 So. 716, the court, holding a contract under which complainant was to live with defendant and take care of the latter during her life in consideration of defendant devising her house to the complainant was not specifically enforceable against the defendant, who had made a new will and devised the house and lot to another, stated: 'This contract, as alleged in the complaint, is continuous in its nature. It cannot be completed until the death of the defendant. It requires and calls for continued and successive acts by complainant and defendant of a mutual nature during defendant's life. The character and nature of these acts are such that they cannot be enforced by a decree of the court. The contract is not complete. It is mutually executory. It involves personal acts of each party. It will not end during the life of defendant. Equity would be in the bill of complaint if complainant had performed her part in full and defendant was dead and enforcement of the contract was asked against her representative. * * * If the contract was made as alleged, and if it has been breached by the defendant, the remedy, during the life of defendant, is not in a court of equity for specific performance, but in a court of law for damages for its breach.'

"In an action for injunction to restrain an action of ejectment and for specific performance of a contract for conveyance of real estate in consideration of life support of defendant, complainant's mother, the court, in Chadwick v. Chadwick (1899) 121 Ala. 580, 25 So. 631, denying relief by way of specific performance on the ground that there was no mutuality of remedy, stated: 'The contract described in this bill belongs to a peculiar class to which the remedy of specific enforcement is not adapted or applied. The chief consideration moving to

the defendant for the conveyance which the complainant seeks to compel is the agreement on his part to allow the defendant to reside with him, and to support her during her life. It is an undertaking which implies the legal duty on his part not only to furnish necessaries for defendant's support, but to treat her with due consideration so that her existence as a member of his household might be at least tolerable. The court of equity will not undertake to regulate or control the performance of such continuous duties, and it would be powerless to do so by any of its process.'

" 'An executory agreement to convey in consideration of support or care to be furnished to one party by the other during the lifetime of the latter cannot be specifically enforced in a court of equity by the latter, and therefore lacks such mutuality of obligation that, until it has been fully executed by the former, no equitable relief to the former by way of specific performance of the agreement to convey can be given.' Newman v. French (1908) 138 Iowa 482, 116 N.W. 468, 18 L.R.A.,N.S., 218, 128 Am.St.Rep. 212.

"Speaking of contracts to give property in consideration of life support, the court in Lindsay v. Glass (1889) 119 Ind. 301, 21 N.E. 897, stated that 'such contracts, involving continuing care and personal service, and requiring for their proper execution that the parties concerned should occupy toward each other relations of confidence and esteem, cannot be specifically enforced while they remain executory. * * * To compel one to accept the alternative of receiving support under an improvident contract, or to become a subject of charity might often result in great oppression. Such contracts belong to a class the specific enforcement of which courts of chancery do not undertake. Parties who enter into such agreements must rely upon a continuance of the confidence and esteem which induced the arrangement in the beginning, or take their chances to recover damages if the contract is repudiated.'

" 'The sole question involved in this appeal is whether the parol agreement entered into between appellant (promisor) and appellees (promisees) is, under the circumstances, capable of enforcement in equity by specific performance. In our judgment it is not. The contract in this case only called for the rendition of personal services by appellees to appellant for the rest of his life. It must be apparent that if the situation were reversed appellant could not maintain a bill for specific performance compelling appellees to render such personal services to him. The rendition of such services might be prevented by the refusal or personal incapacity of appellees to render them or by their death prior to that of appellant. Equity has no means of enforcing such a contract where mutuality of obligation and remedy does not exist.' Rath v. Degener (1933) 352 Ill. 135, 185 N.E. 223."

The rule with reference to courts of equity attempting to enforce, by the remedy of specific performance, contracts for personal services is well stated in 49 Am. Jur. p. 157, § 135, as follows:

"The rule that equity will not specifically enforce contracts for personal services is based principally upon the fact that a decree of specific performance is likely to be futile since it is impossible for the court to coerce the rendering of personal services. Furthermore, coercion by threat of imprisonment for debt would violate constitutional provisions against involuntary servitude. * * *

"The presence of an adequate remedy at law is often given as a specific reason for denying specific performance of a contract for services. Another reason for denying specific performance of a contract for services is that in view of the peculiar personal relations which result from a contract of service, it would be inexpedient, from the standpoint of public policy, to attempt to enforce such a contract specifically. Even if such authority existed, its exercise would be undesirable. If the relation of employer and employee is to be of value or profit to either, it must be marked by some degree of mutual confidence and satisfaction; and when these are gone, and their places usurped by dislike and distrust, it is to the advantage of all concerned that their relations be severed."

There are some cases holding that under some circumstances such contracts are enforceable by the equitable remedy of specific performance, but such cases do not apply here. See also Fitzpatrick v. Michael, 177 Md. 248, 9 A.2d 639; Stone v. Burgeson, 215 Ala. 23, 109 So. 155; Watson v. Hobson, 401 Ill. 191, 81 N.E.2d 885, 7 A.L.R.2d 1156; Nunn v. Boal, 29 Ohio App. 141, 162 N.E. 724; O'Brien v. O'Brien, 197 Cal. 577, 241 P. 861; McCue v. Johnston, 25 P. 306; Galloway v. Eichells, 1 N.J.Super. 584, 62 A.2d 499; Sword v. Aird, 306 Mich. 14, 9 N.W.2d 907; Roth v. Degener, 352 Ill. 135, 185 N. E. 223; Cordano v. Ferretti, 15 Cal.App. 670, 115 P. 657.

The trial court seemed to place some stress upon the fact that Mrs. Frank Martin had, since 1935, outlived her life expectancy according to the United States mortality tables, and that therefore the contract had been substantially performed. We cannot agree with this contention. The contract made was that Judge Clarence Martin and his wife, Frank J. Martin, were to be cared for during their entire lifetime and it is quite possible that Mrs. Martin may live a great many more years and may even live many years after Mrs. Lela B. Martin has passed away. It appears that she is now approximately eighty years of age, but she may live to become ninety years of age or even one hundred years of age, and the care and support which she will need during those years will be of more importance to her than in the years gone by.

The relation between Mrs. Frank Martin and Mrs. Lela B. Martin may become estranged and their further living together may become intolerable. But if a situation of this kind arises in the future the trial judge by his judgment has left to Mrs. Frank Martin no other alternative than to abandon her homestead and forfeit all of her further rights therein and attempt to live somewhere else on the sum of $50 per month. In decreeing this the trial judge has in effect made a contract for the parties which they themselves did not make. The original contract did not provide that Tom and Lela Martin should either support or care for Judge and Mrs. Martin during their lifetime or pay them $50 per month each for support. The contract was that Tom and Lela Martin should come to the Martin homestead and, among other things, live with the Clarence Martins and comfort and support them in their old age until they had both passed away. The trial court is not authorized to put a provision into the contract which the parties themselves did not see fit to make. The court has no power to decree specific performance in any manner except in keeping with the terms of the agreement made by the parties. Miller v. Jones, 68 W.Va. 526, 71 S.E. 248, 36 L.R.A.,N.S., 408; Hunt v. Rhodes, 1 Pet. 1, 7 L.Ed. 27; 49 Am.Jur. 194, § 171. It is reasonable to suppose that when Clarence and Frank Martin entered into the agreement with Tom and Lela Martin to convey to them their homestead in consideration of support and care for the remainder of their lives, they had no idea of being forced out of their homestead during the lifetime of either. Such a contract is not performed by merely caring for elderly people for the number of years which the United States Mortality Tables indicate that they will live.

When parties enter into a contract such as the one here involved, they must realize that in order for such a contract to be carried to completion the parties must remain friendly and there must be cordial and considerate relations between them. They must know that if their relations become unfriendly and the situation becomes intolerable the contract cannot be carried out. And, furthermore that any contract for personal services cannot be specifically performed by the courts, and therefore if either party to the contract should see fit to breach it the only remedy would be a suit for damages for the breach thereof.

It seems that in 1939 Mrs. Frank J. Martin conveyed the 200 acres herein involved, along with 150 more acres, to Lela B. Martin as an accommodation to Tom Martin, to enable him to borrow some money, and after this transaction it was agreed that the property would be conveyed back to Mrs. Frank J. Martin. In 1940 the property was conveyed back to Mrs. Frank

J. Martin by Lela B. Martin, and while she contended that this deed was not executed by her, the jury found against Lela B. Martin on this issue. The jury further found in effect that the agreement entered into in 1935, for the care and support of Clarence and Frank Martin was not to be disturbed in any way by the exchange of these deeds, but was to remain in full force and effect.

It is further contended by appellee that the judgment rendered can be upheld as a declaratory judgment. We overrule this contention. The judgment is in no sense a declaratory judgment but one actually taking the equitable title to the land away from Mrs. Frank J. Martin and giving it to Mrs. Lela B. Martin, together with all the rents, revenues and other income from the land. The judgment such as the one rendered here cannot be the subject of a declaratory judgment because there can be no assurance that either party will complete the contract and until it is completed it remains an executory contract.

Appellee contends that her husband, Tom Martin, inherited a one-half interest in the 200 acres involved at the time of the death of his father, Clarence Martin. We overrule this contention. Appellee introduced evidence which shows that Clarance Martin left a will devising all of his property to his wife, Frank J. Martin. And, furthermore, appellee plead her title showed that she received a deed to the entire 200 acres from Mrs. Frank J. Martin in 1939, and the jury found that she and her husband conveyed the entire 200 acres back to Mrs. Frank J. Martin in 1940. All this precludes any contention that Tom Martin held title to any part of the 200 acres at the time of his death.

Appellee further contends that the contract for support and care made in 1935 was not in writing but in parole, and therefore not enforceable under the provisions of the Statute of Frauds, Subd. 4, Article 3995, Vernon's Ann.Civ.Stats. Inasmuch as we have already held that the contract, either in parole or in writing, cannot be enforced by specific performance, we do not find it necessary to pass upon this question.

Accordingly, that part of the judgment of the trial court which was appealed from will be reversed and judgment here rendered that Lela B. Martin as cross-plaintiff take nothing by reason of her cross-action and that appellant, Mrs. Frank J. Martin, have judgment removing the cloud from the title to her homestead, consisting of the 200 acres fully described in the pleadings. The above judgment is rendered without prejudice to any right of Lela B. Martin to bring suit for any damages she may have suffered as a result of the breach, if any, by Mrs. Frank J. Martin of the contract involved.

Reversed and rendered.