## McDOWELL v. GREENLAND.
### No. 10141.

Court of Civil Appeals of Texas. Austin.
May 27, 1953.

Rehearing Denied June 17, 1953.

Snodgrass & Smith, Upton, Upton, Baker & Griffis, San Angelo, by Travis E. Baker and Craig Porter, San Angelo, of counsel, for appellant.

O'Neal Dendy, San Angelo, H. W. Bigler, Miles, Paul Petty, Ballinger, by O'Neal Dendy, San Angelo, for appellee.

ARCHER, Chief Justice.

Appellee sued appellant in statutory trespass to try title to recover the fee-simple title to a tract of land situated in Tom Green County. Upon verdict of a jury, judgment was rendered in favor of appellee awarding full recovery.

The appeal is before this Court on fifteen points assigned as error in the trial of this case, and are to the effect that the court erred in overruling appellant's motion, made at the close of the testimony to withdraw the case from the jury and render judgment in his favor because of the failure of the testimony to establish a breach of a condition in the deed; that the evidence did not raise any issue of fact; that there was no evidence that appellee had declared a forfeiture of the title, and in holding that appellee was not bound by her admissions to the effect that she had not declared a forfeiture because of any breach of the conditions in the deed. That it was error to submit Special Issues Nos. 1, 2, 3, 4, 5, 6 and 7 inquiring if appellee requested appellant to perform any work, or substantially failed, or failed to reasonably care for appellee, or if appellant cursed appellee, or called her a liar, or if appellant shoved appellee into the corner of her house, and if such misconduct rendered intolerable for appellee to permit appellant to work for her and care for her; and in admitting in evidence testimony of appellee with reference to negotiations and discussions with appellant at the time of and prior to the execution of the deed; in submitting Special Issue No. 8 as to the rental value of the land, and in allowing a recovery of $800 as rental value.

This suit was filed September 1, 1951, and by amended petition alleged that appellee was the owner in fee simple of the land sued for and that appellant unlawfully entered and dispossessed her and sought to recover the title and damages. Appellant by an amended answer denied the trespass and disclaimed any present right to possession, and alleged that he was the owner of the fee-simple title to the land, subject only to appellee's right of possession, use and income therefrom, and further plead not guilty.

It was stipulated that appellee was the owner of the lands on July 28, 1950, on which date she executed and delivered the deed to the lands, and that she leased the land to appellant for the calendar year 1951, and that on December 4, 1951, notified appellant to vacate the premises. A further stipulation was made that from July 28, 1950 to and including the date of the trial, the plaintiff owned and was in possession of funds and income sufficient to support her for all her needs, and that she did not need any meat, drink, washing, lodging or apparel from the defendant and did not call on defendant for any such named items.

The deed, omitting formal parts and description, reads as follows:

"That I, Mary Greenland, a feme sole, of the County of Runnels, State of Texas, for and in consideration of the sum of One Hundred and no/100 ($100.00) Dollars, cash to me in hand paid, the receipt of which is hereby fully acknowledged and confessed to me in hand paid by Matthew W. McDowell, and the further consideration that the said Matthew M. McDowell shall work for me and care for me, to support and provide for me sufficient meat, drink, washing, lodging, apparel and attendance suitable to my state and situation, at the choice and election of myself, during my natural life, from time to time as long as I shall continue to live, Provided, always, and upon condition that if the said Matthew W. McDowell, his heirs, executors or administrators, shall fail or refuse to perform any of the agreements and stipulations above mentioned, then this assignment, transfer and conveyance shall be null and void, and the property hereinafter described shall immediately revest and revert to me and be subject to the possession and control of the said Mary Greeland without the necessity of any act, suit or action on my part. Have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said Matthew W. McDowell * * *.

"* * * Except, however, that Grantor herein reserves, and it is hereby expressly agreed that she shall have, for herself and

her assigns, the full possession, benefit and use of the above described premises, as well as of the rents, issues and profits thereof, for and during her natural life.

"To have and to hold * * * unto the said Matthew W. McDowell, his heirs and assigns forever; and I do hereby bind myself, my heirs, executors and administrators, to Warrant and Forever Defend all and singular the said premises unto the said Matthew W. McDowell, after·my decease, * * *."

The grounds of appellee for forfeiting the deed are the breach of the conditions thereof by the appellant in that:

"(1) Appellant failed and refused to 'work' for Appellee.

"(2) Appellant failed to 'care' for Appellee.

"(3) Appellant failed to furnish Appellee 'attendance'.

"(4) Appellant willfully and deliberately so conducted himself as to make it intolerable for the Appellee to permit Appellant to further work for her or care for her as provided for in said deed."

Appellant was a nephew of appellee residing in Iowa and came to Texas to visit appellee, who is a widow about 78 years old, without any living relatives in Texas, and was living alone on a 50-acre tract near Miles, Texas, her nearest neighbor living about one-half mile away.

It appears that a brother of appellant had gotten about $46,000 from appellee in 1949 and that appellant knew of this.

From January 1950, to July 1950, the parties orally and by correspondence discussed the arrangement to exist between them when appellant moved to Texas. Among the agreements was that appellee would execute the deed and would prepare a house for appellant to live in.

For some months after appellant and family moved to Texas they lived in the house with appellee before moving into the house prepared for them, and she had given them $2,500 and made other gifts, loans and furnished a tractor to appellant.

The case was submitted to the jury on eight issues and the first inquired if plaintiff at any time between July 28, 1950 and September 1, 1951, requested the defendant to perform any work for her. The jury's answer was "Yes," and conditioned on this answer the jury was asked if the defendant failed to substantially perform the work which plaintiff had requested him to do, and to this issue the jury answered that he failed. Issue No. 3 asked if the defendant failed to reasonably care for the plaintiff, and the jury's answer was that ·he failed. Special Issue No. 4 inquired if the defendant cursed the plaintiff, and the jury's answer was "No." By Special Issue No. 5 the jury was asked if the defendant called the plaintiff a liar and the answer was "Yes." In answer to Special Issue No. 6 the jury found that the defendant shoved the plaintiff into a corner of her house.

By Special Issue No. 7, conditioned on affirmative answers to all or either of Issues Nos. 4, 5, and 6, the jury was asked if such conduct of the defendant toward the plaintiff rendered intolerable for the plaintiff to permit defendant to care for and work for her and the answer was "Yes."

Requested issues of defendant were given inquiring if the plaintiff waived the performance by defendant of the work she requested and to this the jury answered "No."

Also given was defendant's requested Issue No. 2 inquiring if the plaintiff by her acts and conduct prevented the defendant from performing the work requested of him, and the jury answered "No."

By defendant's Issue No. 3 the jury was requested to find if the plaintiff waived defendant's failure to provide reasonable care and the answer was "No."

By requested issues the jury was asked if the plaintiff by her acts prevented the defendant from providing reasonable care, and the answer was "No."

By defendants requested and given Issue No. 6 the question was asked if the failure to substantially perform the work requested was a substantial breach of any terms of the deed, and the jury answered "Yes."

By defendant's requested Issue No. 7 the question was asked if the failure of the defendant to reasonably care for the plaintiff was a substantial breach of any conditions

contained in the deed and the jury's answer was "Yes."

Based on the jury's verdict the court entered judgment for plaintiff for the lands and for $800 as rental.

The prime question to be determined is: Did the appellee have legal grounds to declare a forfeiture of the title because of a breach in one or more of the conditions?

The first four points are directed to the action of the court in not withdrawing the case from the jury at the close of the testimony and entering judgment for defendant because the testimony failed to establish a breach of a condition, and in not entering judgment for defendant notwithstanding the verdict of the jury because the evidence did not raise a fact issue, and in failing to hold that there was no evidence that plaintiff had declared a forfeiture, and in failing to hold that the plaintiff was bound by her admissions that she had not declared a forfeiture of the title because of any breach of the conditions in the deed.

We do not believe the court was in error in not entering judgment for defendant, but that the judgment rendered by the court based on the jury's verdict was a proper one.

The record is long; the plaintiff and the defendant as well as others testified, and we shall incorporate herein only such testimony as may appear essential to presentation of the facts bearing on the issues.

The defendant testified that he is a nephew of the plaintiff and had lived in Iowa; that he came to Texas three times in 1950. Discussions, correspondence and visits went on from January 1950, until July 28, 1950, the date of the deed, at which time an agreement was reached.

The defendant and family moved in with the plaintiff until a house was prepared for them by the plaintiff and then moved to themselves. The defendant did odd jobs around the place, and some arguments developed between plaintiff and defendant and defendant used some curse words, and that it wasn't his fault that he did not dig the mesquite sprouts and that he fixed fences; that Mrs. Greenland objected to him driving through her gate. That on one occasion he offered to take his aunt to a funeral but she would not let him and called Blalock.

That on another occasion the witness went to the plaintiff's house and asked her if she wanted him to fix her breakfast and she said "No," that she was not feeling well and he inquired if she wanted a doctor and she said "No." That later in the day Mr. and Mrs. McNutt came to Mrs. Greenland's house and subsequently Mr. and Mrs. Miller came and took Mrs. Greenland's temperature and she had 103 or 103½ degrees temperature, and was taken to the hospital and it was found that she had pneumonia.

Mrs. Greenland, plaintiff, testified that she was 78 years old, that her husband died in 1945; that the defendant and family moved in and stayed in her house three months before moving into the house she had prepared for them, and in a discussion about wiring the house the defendant called her a liar. That Bert Blalock, who lived on her ranch, told her that a mutual friend had died and she asked him to come after her and she would stay at the ranch that night and he could bring her back and that he did so. On hearing of this arrangement the wife of the defendant made some complaint and said "You are going off to sleep in a strange bed, be sick and we will have to take care of you" and added "You are not going" but that plaintiff went.

The witness testified that she asked defendant to dig some holes and put up a fence across a 100-acre tract, and he replied that some one would have that place and "damned if he was going to be building a fence for other people."

That she requested defendant to cut some sprouts from around the windmill and he replied that there was no use to cut them and did not cut them and that later she cut them.

That she asked Mr. McDowell to give her a quitclaim deed for the title.

Further testimony was given as to the conduct of defendants when plaintiff was ill and went to the hospital and of occasions when the defendant cursed her and called her a liar and that defendant told her to keep that damned old McNutt off this place;

that he would beat him into the ground. Testimony was given as to a dispute about some feed.

Mrs. Greenland testified:

"Q. You are not mad at him now? A. Not mad at him. He has mistreated me till—I used to love that man with all my heart; he mistreated me, abused me, called me a liar; I couldn't love him any more, and I can't, and if I have got to have my choice to have them come back and care for me or go to my grave I will go to my grave, Mister, for the treatment they have given me. You can take it any way you want to; you can give me my choice; I will go to my grave first.

"Q. I was going to ask you another question. Don't get excited. A. Not excited one bit in the world.

"Q. Don't look that way. A. I can't? Well, I have got a right to look out of my eyes; that's what you are doing.

"Q. I am glad to see you smile. I was afraid you weren't going to smile any more. A. They told me yesterday I mustn't wink or smile at the lawyers, so I didn't do it. You made me laugh at you; you are to blame.

"Q. We are getting along pretty good. I am going to ask you this question, now: You don't want anything else from Mr. McDowell in the way of support, care and attention, do you? A. I am not going to take, be bothered with him at all. Wait, now, you are here intending to take that land away from me for him doing nothing for it. That there contract, he understood it; he was to care for me and do for me and they wouldn't let a child stay with me at night. I stayed by myself. I am old and if I had a stroke I could lay and die and nobody care for me, and they was to do that and they refused to do it, and the little lady come over and said, 'I told Matt I wasn't going to be second fiddle, I was going to be boss of the whole business.' I said, 'Myrna, I don't care what you are at your house

but I was boss of my own house, and I always will be.'

\* \* \* \* \* \*

"Q. Just about through now. When was it that you declared you wanted this land back? A. I told Matthew before I started suit, on the 1st of September in 1951, I said, 'you come here and abuse me all the time, and, Matthew, I can not take it any longer; I can't stand it; you give me a quitclaim deed, clear title to that land, and we will let you go on and I will go my way and you go yours.' He just comes out, he wouldn't do nothing of the kind."

Further testimony was given on cross-examination that plaintiff did not want to take the land because he did not dig the post holes, or because he did not fix the trough, and did not cut the sprouts, or failed to carry her to the hospital, but that she took the land away because he would not care for her, do nothing for her, not let a child come and stay with her at night, would not cook or sweep her house nor do one thing, and that he did not come up with his contract.

Other witnesses testified as to events and conditions but do not directly pertain to the principal issues in the case and we do not quote or comment on same.

We believe that the evidence was sufficient to show a breach of the contract on the part of appellant. In part, the evidence is definite, and we have herein set out, subjecting appellee to indignities which rendered unbearable for her to continue to have the appellant care for her and the verdict of the jury is reasonably supported by the record as a whole.

Mistreatment of her by appellant, of such character as to render her life intolerable, would be as much a breach of their agreement as a failure to "care" for her. Alford v. Alford, 1 Tex.Civ.App. 245, 21 S.W. 283.

In Martin v. Martin, Tex.Civ.App., 230 S.W.2d 547, error ref., n.r.e., the court discusses the relationship that is involved in a contract by which one person agrees to support another.

■ We believe that the suit in trespass to try title was a proper procedure for recovery of land on breach of either a condition precedent or a condition subsequent. Alford v. Alford, supra; Texas Rural Communities v. Avary, Tex.Civ.App., 113 S.W. 2d 597.

In Gulf, C. & S. F. Ry. Co. v. Dunman, 74 Tex. 265, 11 S.W. 1094, 1095, the Supreme Court stated:

"The title to an estate, liable to be defeated by the nonperformance of a condition subsequent, remains in the grantee until divested by the entry of the grantor. 2 Washb. Real Prop. 14. The institution of this suit was equivalent to such reentry; * * *."

Appellant has cited a number of cases as to principles of law in construing deed such as Bumpass v. Bond, 131 Tex. 266, 114 S.W.2d 1172; Dahlberg v. Holden, Tex. Sup., 238 S.W.2d 699, which we accept as correct.

■ The deed was conditioned on several events, the failure to perform any of which would entitle the grantor to forfeit the deed. The appellee requested appellant to do certain work for her on occasions, and such work was necessary, but there is evidence that the appellant failed and refused to do so.

The jury which heard the witnesses' testimony, saw and observed them, chose to believe that of the appellee and returned its verdict favorable to plaintiff, and we believe that its verdict is supported by the record.

The question of waiver was an issue of fact for the jury, and this issue was submitted at the request of appellant, in the following words:

"From a preponderance of the evidence, do you find that the plaintiff, Mrs. Mary Greenland, waived the defendant's failure to provide reasonable care for her between July 28, 1950 and September 1, 1951?

"Answer: No."

In Leonard v. Smith, Tex.Civ.App., 186 S.W.2d 284, 286, the Court held:

"While it is the settled law in this state that the testimony of a party to a lawsuit must be construed as binding upon him, that rule is not controlling where he subsequently modifies or explains his former testimony, and the probative value of the testimony is held to be a question of fact for the jury or the trial court."

■ We believe that the court, in order to properly construe the deed, was authorized to admit the testimony of appellee with reference to negotiations, agreements and discussions with appellant at the time of and with reference to circumstances surrounding the execution and delivery of the deed in question, and in order to explain the sense in which the parties understood the language of the deed when it was made, and to corroborate the other testimony, offered to show a breach of the conditions in the deed after it was made. Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007.

We believe that the judgment allowing a recovery for damages was justified, and because appellant had the land lease free for 1951 would not allow him to keep the land rent free for 1952. 27 Tex.Jur. 323, Sec. 190, under Title, Landlord and Tenant; Ballingall v. Brown, Tex.Civ.App., 226 S.W. 2d 165, error ref., n.r.e.

The judgment of the trial court is affirmed.

Affirmed.