Filed 11/9/23  Ross v. Monempour CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DAVID ROSS et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>JUSTIN MONEMPOUR,<br>Individually and as Trustee, etc.,<br><br>    Defendant and Respondent. | B317614<br><br>(Los Angeles County<br>Super. Ct. No.<br> 20STCV29427) |

APPEAL from an order of dismissal of the Superior Court of Los Angeles County, Jon Takasugi, Judge.  Reversed with directions.

Law Offices of Michael L. Tusken and Michael L. Tusken for Plaintiffs and Appellants.

Gusdorff Law, Janet Gusdorff; Marquee Law Group and Poya Ghasri for Defendant and Respondent.

————————

# INTRODUCTION

David and Leah Ross filed this action against Justin Monempour, alleging he breached a series of oral agreements that they claim gave them an option to purchase real property they previously owned before their lender foreclosed on it. The Rosses appeal from an order of dismissal after the trial court sustained a demurrer by Monempour without leave to amend. The trial court ruled that the Rosses' action was barred by the statute of limitations and that the Rosses had not complied with an alleged contract condition requiring them to demonstrate proof of loan approval for the property's purchase price of $1,800,000.

We agree with the Rosses that, because of tolling provided by an emergency rule the Judicial Council of California adopted in response to the COVID-19 pandemic, California Rules of Court, appendix I, emergency rule 9 (Emergency rule 9), their action is timely. We also agree they sufficiently alleged they complied with the $1.8 million loan approval condition. Finally, we conclude the Rosses have sufficiently pleaded equitable estoppel to assert the statute of frauds, another ground for demurrer that Monempour asserted and continues to press. Therefore, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Rosses File This Action*

On August 4, 2020 the Rosses filed this action against Monempour for breach of contract and related causes of action. The Rosses alleged that in 2004 David purchased and moved into a residential property in Los Angeles, having executed a deed of trust for the property to secure a $780,000 loan.  Leah moved into the property in 2006.  In 2008 the property "changed hands" (in some unexplained manner), but David and Leah continued to live there.  On December 5, 2017, the lender foreclosed on the property, under the deed of trust David had executed, and sold the property to Monempour, as trustee of the Martel Trust.

"Immediately after the trustee's sale," the Rosses alleged, they met with Monempour to discuss (re)purchasing the property. In this discussion Monempour allegedly gave the Rosses an option to buy the property for $1.8 million, with Monempour "carrying $600,000 for one year at 10% interest only," on the condition the Rosses "present proof of loan approval for the purchase amount of $1,800,000" (the December 2017 Agreement). The Rosses did not allege a specific period for the option. Instead, they alleged the Rosses and Monempour agreed that, "upon [the Rosses] presenting [Monempour] with proof of a loan," Monempour "would grant [the Rosses] sufficient time to purchase the Subject Property."

The Rosses alleged they "subsequently presented [Monempour] with proof of the loan approval."  Specifically, they presented a letter from RanLife Home Loans—dated December 29, 2017 and attached to the Rosses' complaint as exhibit 1—stating that David had "applied for a purchase money

3

mortgage" and that RanLife, "[h]aving reviewed his income and credit," had "issued a preliminary approval for a purchase price of $1,800,000." RanLife explained in the letter that it would issue "a full and final approval" only upon "the satisfactory completion and review" of certain conditions: evidence of homeowners insurance, clear title, a satisfactory appraisal, and an underwriter review.

The Rosses alleged that meanwhile, and unbeknownst to them, Monempour had filed an unlawful detainer action against them. And that in mid-January 2018—after the Rosses allegedly "complied with [Monempour's] terms and conditions and performed exactly as the parties had agreed" regarding the Rosses purchasing the property—Monempour served the Rosses with notice of the unlawful detainer action. In that action the parties entered into an April 2018 stipulated judgment that required the Rosses to vacate the property by July 11, 2018. The parties also allegedly agreed that, "because of [the Rosses'] option to purchase the Subject Property," the Rosses "would not be required to make any payments for use of the property from December of 2017 through July 11, 2018." Thus, the Rosses alleged, they "continued to believe that they had an option to purchase the Subject Property."

The Rosses alleged that in "late May of 2018" they "sought to exercise their option to purchase the Subject Property, subject to the terms and conditions that the parties had agreed upon." Monempour, however, "reneged on the agreement and was not willing to carry any amount." In "an attempt to salvage the option to purchase," the Rosses allegedly told Monempour they "could secure a $500,000 loan on a property they owned in Norwalk." Monempour allegedly responded that, if the Rosses

4

"would bring at least $300,000 cash from that loan into the purchase transaction, he would carry the other $300,000" (the May 2018 Agreement). The Rosses applied for and (we reasonably construe their complaint to allege they) obtained the loan on their Norwalk property. But in June 2018 Monempour again "refused to sell [them] the Subject Property, citing his lack of confidence in the deal because," among other reasons, David was "'too old and sick.'"

In July 2018, "shell-shocked" by Monempour's "duplicitous behavior," the Rosses asked to extend the July 11, 2018 deadline for vacating the property "so that the purchase could be consummated." Monempour allegedly agreed, but at a price: In exchange for $10,000 he would extend the deadline "until July 19, 2018, with an additional extension to July 31, 2018, upon the opening of escrow." The Rosses agreed, David paid Monempour the $10,000 in cash, and on July 10, 2018 Monempour signed a writing memorializing the agreement (the July 10, 2018 Agreement). This document, dated July 10, 2018 and attached as an exhibit to the Rosses' complaint, read: "This will confirm that per the agreement between Justin Monempour, trustee of the Martel Trust, and David and Leah Ross, the Ross family will be permitted to remain on the property . . . up until and including Wednesday July 18, 2018."

The Rosses alleged, however, that on July 16, 2018 David received a text message from Monempour stating that the "'lock out will proceed'" because the parties' "agreement was never fulfilled." Because David had (nine years prior) filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code and that matter was still pending, Monempour filed a motion in the bankruptcy court for relief from the

automatic stay to allow him to evict the Rosses.  The bankruptcy court granted the motion, permitting Monempour to enforce his "remedies to obtain possession of the Property, including lockout."

B.    *The Rosses File a First Amended Complaint*

Monempour demurred to the Rosses' complaint.  He argued, among other things, they failed to allege facts sufficient to constitute a cause of action for breach of oral contract because the statute of frauds requires any contract for the sale of real property to be in writing and the Rosses' allegations "fail to provide any evidence of a writing signed by . . . Monempour agreeing to give [the Rosses] an option to purchase the Property that includes [the Rosses'] alleged contractual terms."  He also argued the two-year statute of limitations barred the breach of oral contract cause of action.  Citing the Rosses' allegations he "reneged" on the December 2017 Agreement in May 2018 and "refused" again to sell the property under the May 2018 Agreement in June 2018, Monempour contended that, "no matter which date [the Rosses] try to point to as the date of the alleged breach," the two-year statute of limitations barred their cause of action because they did not file this action until August 4, 2020.  Monempour also argued the Rosses had not performed under the alleged oral agreement because the preliminary loan approval they obtained from RanLife did not "satisfy the terms of their alleged contract."

Before the court heard Monempour's demurrer, the Rosses filed a first amended complaint.  In it they newly alleged that on July 27, 2018 Monempour "orally agreed that if [the Rosses] could prove that they had access to liquid funds in the amount of

6

$300,000 within 30 days after the opening of escrow, [Monempour] would further extend the option until August 10, 2018 and open escrow by August 10th" (the July 27, 2018 Agreement). The Rosses alleged that, in reliance on this new promise by Monempour, David spent $3,000 arranging a commitment from a loan broker for a $300,000 "hard money loan"[1] secured by the Norwalk property and that, on August 7, 2018 (the day the bankruptcy court granted Monempour's motion for relief from the automatic stay), David advised Monempour the "$300,000 would be available and requested that the parties open escrow under the terms of the extended option." Monempour allegedly refused this request and "reneged" on the parties' July 27, 2018 Agreement. The Rosses further asserted in their first amended complaint that their cause of action for breach of contract, based on the oral agreements for an option to purchase the property, was "not barred by the statute of frauds under the doctrine of equitable estoppel."

Monempour demurred again. He continued to argue the Rosses' cause of action for breach of oral contract was barred by the statute of frauds, contending the new allegation they expended "time and money in connection with making payments towards the Property's purchase price" was "insufficient to take an oral agreement out of the statute of frauds or to allege estoppel." Monempour also continued to argue the breach of oral

---

[1]     "A hard money loan is a private loan secured against real property. Unlike a mortgage, a hard money loan is usually a short-term investment, often with a fairly compressed repayment period and a high interest rate." (*Strasburger v. Blackburne & Sons Realty Capital Corp.* (C.D.Cal., June 25, 2020, No. CV-20-00220-CJC(JCx)) 2020 WL 6128223, p. *1, fn. 3.)

contract cause of action was barred by the two-year statute of limitations. He argued the court should disregard the new allegation of a July 27, 2018 Agreement to conditionally extend the Rosses' purchase option to August 10, 2018[2] as a "sham pleading" because it was "a transparent attempt to bypass the statute of limitations" and "entirely inconsistent with their previous pleading." He argued the Rosses' remaining causes of action were similarly barred by the statute of frauds, the statute of limitations, or both.

C.      *The Trial Court Sustains Monempour's Demurrer to the First Amended Complaint with Leave To Amend, and the Rosses File a Second Amended Complaint*

The trial court sustained Monempour's demurrer to the first amended complaint with leave to amend. The court ruled that, although the Rosses' equitable estoppel theory regarding the statute of frauds required a "factual determination not properly decided at this stage" (a ruling in the Rosses' favor—see footnote 9), the two-year statute of limitations barred the Rosses' cause of action for breach of oral contract. The court agreed with Monempour that the Rosses' new allegations of another, previously unmentioned extension of their purported option appeared to run afoul of the sham pleading doctrine, according to which (the trial court said) a "pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective." The court therefore sustained the demurrer to all causes of action with leave to amend to allow the

---

[2]      Which would mean the last alleged breach of the oral contract occurred slightly less than two years before August 4, 2020, the date the Rosses filed this action.

8

Rosses to "set forth sufficient facts to explain why this third [oral] extension, which brings this case within the statute of limitations, was excluded from the original complaint."

The Rosses then filed the operative, second amended complaint. In it they asserted causes of action for breach of oral contract, declaratory relief, specific performance, breach of the implied covenant of good faith and fair dealing, and quiet title. They also newly alleged that, when they filed their original complaint, they "believed that they were well within any applicable statute of limitations. Therefore, [they] did not deem the additional facts added to the First Amended Complaint . . . as sufficiently necessary at the time of the original complaint to include them." That was the extent of their explanation for not alleging the third oral extension in their prior complaints.

D. *The Trial Court Sustains Monempour's Demurrer to the Second Amended Complaint Without Leave To Amend*

Monempour demurred yet again. In addition to arguing the Rosses had not sufficiently pleaded estoppel to overcome the statute of frauds, he continued to argue the sham pleading doctrine applied to the Rosses' attempt to plead around the statute of limitations. He argued it was "incongruous" the Rosses "saw fit to allege that Monempour purportedly committed breaches in May 2018, June 2018, and July 2018, and yet failed to include the date of the last alleged breach, which was only included after [the Rosses] realized the statute of limitations bar to recovery and now conveniently saves [them] from that same bar to recovery." Monempour also again argued the Rosses' preliminary loan approval did not satisfy their "obligation to

9

provide loan approval for $1,800,000" under the alleged December 2017 Agreement.

The trial court sustained Monempour's demurrer to the second amended complaint without leave to amend. Concluding that the allegations in the second amended complaint of a previously unmentioned extension to the Rosses' option to purchase the property were inconsistent with the allegations in their prior complaints and that the Rosses had not satisfactorily explained the inconsistency, the court (impliedly) ruled the sham pleading doctrine applied to those allegations.

The court also ruled there was "another fundamental deficiency" with the second amended complaint. The court observed the Rosses alleged "that the parties entered into an oral contract for the sale of real property, that this contract should be enforced on an equitable theory despite running afoul of the statute of frauds, that [the Rosses] performed all obligations under the contract, and [that Monempour] breached the agreement in spite of this." However, the court ruled, the Rosses failed to allege they performed their obligations under the alleged December 2017 Agreement. Specifically, the Rosses continued to allege the agreement was conditioned on "proof of loan approval for the purchase amount of $1,800,000," but the document the Rosses characterized as proof of that loan approval was only a preliminary loan approval conditioned on four requirements. The court stated "the express language of this document indicates that no loan has been approved, and that there were outstanding terms and conditions which had to be satisfied before the loan amount was approved." Thus, the court concluded, the Rosses' allegations showed that they "had not yet received a loan for the approved amount as required under the terms of the alleged oral

10

contract" and that "they did not perform under the agreement as agreed."

The trial court entered a signed order of dismissal with prejudice on October 26, 2021. The Rosses timely appealed.

## DISCUSSION

A. *Standard of Review*

On appeal from an order of dismissal after an order sustaining a demurrer, "'we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] "'"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed."' . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.""'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292; see *State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Company* (2023) 90 Cal.App.5th 1119, 1134 ["We construe the complaint in a reasonable manner and assume the truth of properly pleaded factual allegations that are not inconsistent with other allegations, exhibits, or judicially noticed facts."].)

B. *The Trial Court Erred in Sustaining Monempour's Demurrer to the Second Amended Complaint*

The Rosses argue the trial court erred in ruling that the two-year statute of limitations barred their complaint and that they did not perform their obligations under the December 2017

11

Agreement to present proof of a $1.8 million loan approval. Monempour argues that the trial court's rulings were correct and that (contrary to the trial court's ruling on Monempour's demurrer to the Rosses' first amended complaint) the statute of frauds also bars the Rosses' complaint because the Rosses did not sufficiently allege Monempour is equitably estopped from asserting the statute of frauds. We agree with the Rosses down the line.

1.  *Because Emergency Rule 9 Tolled the Statute of Limitations, the Rosses' Action Was Timely*

In their second amended complaint the Rosses alleged Monempour committed four breaches of an oral contract giving them an option to purchase the property. These occurred (1) in "late May 2018," when Monempour "reneged" on the original December 2017 Agreement; (2) in June 2018, when Monempour refused to sell the property to the Rosses under the May 2018 Agreement, which required them to contribute $300,000 from a loan they acquired on their Norwalk property; (3) in mid-July 2018, when Monempour did not honor the July 10, 2018 Agreement that allowed the Rosses to remain on the property until July 19, 2018 "so that the purchase could be consummated" ("with an additional extension to July 31, 2018, upon the opening of escrow") in exchange for $8,000;[3] and (4) on August 7, 2018, when Monempour refused to sell the property to the Rosses under the terms of the July 27, 2018 Agreement.

---

[3]     In their initial complaint, the Rosses alleged this number was $10,000; in the first and second amended complaints, they said it was $8,000.

12

The limitations period on a cause of action for breach of an oral contract is two years (see Code Civ. Proc., § 339), and it runs from the occurrence of the alleged breach (*Piedmont Capital Management, L.L.C. v. McElfish* (2023) 94 Cal.App.5th 961, 964). Thus, absent tolling of the limitations period, the breaches alleged by the Rosses in their cause of action for breach of oral contract would have resulted in four statutory filing deadlines: (1) "late May" 2020, (2) June 2020, (3) mid-July 2020, and (4) August 7, 2020.  The first three of these, of course, were before the Rosses filed this action on August 4, 2020, and the fourth is the result of allegations disregarded by the trial court under the sham pleading doctrine.

But there was tolling of the limitations period under Emergency rule 9.  "Emergency rule 9 was adopted by the Judicial Council and became effective on April 6, 2020.  As initially adopted, Emergency rule 9 tolled 'the statutes of limitations on all civil causes of action from April 6, 2020, . . . until 90 days after the Governor declares that the state of emergency related to the COVID-19 pandemic is lifted.'  As amended on May 29, 2020, and as pertinent here, Emergency rule 9 reads: ' . . . Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020.'" (*People v. Financial Casualty & Surety, Inc.* (2022) 78 Cal.App.5th 879, 885; accord, *LaCour v. Marshalls of California, LLC* (2023) 94 Cal.App.5th 1172, 1186.)  Emergency rule 9 thus tolled the statute of limitations on the Rosses' cause of action for breach of oral contract for nearly six months.  As a result, the Rosses' breach of contract action was timely, even

13

when calculating their filing deadline from the earliest alleged breach.[4]

Monempour argues the Rosses forfeited the tolling benefits of Emergency rule 9 because they did not mention Emergency rule 9 in the trial court.  It is true the Rosses did not invoke Emergency rule 9 in opposing Monempour's demurrers.  And it is true that, as a general rule, """"a party is not permitted to change its position on appeal and raise new issues not presented in the trial court.  [Citation.] . . .  However, 'a litigant may raise for the first time on appeal a pure question of law which is presented by undisputed facts.'  [Citation.]  A demurrer is directed to the face of a complaint [citation] and it raises only questions of law [citations].  Thus an appellant challenging the sustaining of a general demurrer may change his or her theory on appeal [citation], and an appellate court can affirm or reverse the ruling on new grounds."""" (*Bocanegra v. Jakubowski* (2015) 241 Cal.App.4th 848, 857; see *Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 942-943 [in reviewing a ruling on a demurrer, "we are not bound by the trial court's reasoning and may consider new legal theories or pure questions of law presented by undisputed facts for the first time on appeal"]; *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 994 ["We do not review the validity of the trial court's reasoning.  [Citation.]  For that reason, and because demurrers raise only questions of law, we may also consider new theories on appeal to challenge or justify the trial court's rulings."].)

---

[4]     Two years from "late May 2018" plus 178 days ("April 6, 2020, until October 1, 2020") gives a filing deadline in late November 2020.

14

Monempour also contends Emergency rule 9 does not help the Rosses because the statute of limitations on their cause of action for breach of contract expired prior to the Emergency rule's effective date of April 6, 2020. He argues that the relevant breach for determining the statutory filing deadline occurred "in mid-January 2018," when the Rosses allegedly learned he had filed an unlawful detainer action against them, and that therefore the Rosses "had to bring their lawsuit for breach of contract by no later than mid-January 2020." But Monempour does not explain how his filing an unlawful detainer action against the Rosses (or their learning of it) constituted a breach of the December 2017 Agreement that gave the Rosses an option to purchase the property, which was the only contract alleged to have existed between the parties as of January 2018.[5]

Finally, Monempour suggests another reason the Rosses' breach of contract cause of action is "untimely": Because the Rosses did not allege a period for their option under the December 2017 Agreement (or any consideration for it) and allege they first attempted to exercise that option in May 2018,

---

[5] In fact, the Rosses alleged that, when they confronted Monempour about the unlawful detainer action in January 2018, he "claimed that it was his partners and principals who had done this and that he would not do anything to harm the agreement between himself and [the Rosses]" and "explained that the UD was filed only 'to give [Defendants] leverage in any future negotiation if necessary.'" These allegations suggest the alleged December 2017 Agreement, which gave the Rosses an option to purchase the property, was separate from any (unalleged) agreement Monempour may have breached by filing or serving notice of the lawful detainer action. Ownership and possession are very different things.

15

Monempour "revoked whatever option he may have initially offered" by serving the Rosses with the unlawful detainer action in January 2018.[6] But again, Monempour does not explain how serving the Rosses with the unlawful detainer action was related to the alleged December 2017 Agreement, let alone amounted to revoking the option allegedly extended to the Rosses under that agreement. Moreover, even assuming that in January 2018 Monempour revoked his offer of a purchase option (by serving the unlawful detainer action), that fact would relate to whether the contract on which the Rosses are suing existed, not to the date of an alleged breach of that contract, and thus is irrelevant to determining the statutory period for filing the action. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 ["the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff"].)[7]

---

[6]     "'[A]n option based on consideration contemplates two separate [contracts], i.e., the option contract itself, which for something of value gives to the optionee the irrevocable right to buy under specified terms and conditions, and the mutually enforceable agreement to buy and sell into which the option ripens after it is exercised. Manifestly, then, an irrevocable option based on consideration is a contract . . . .' [Citation.] Conversely, an option without consideration is not binding on either party until exercised [citation]; until then, the option "'is simply a continuing offer which may be revoked at any time.'"" (*Steiner v. Thexton* (2010) 48 Cal.4th 411, 420.)

[7]     Because the Rosses filed their cause of action for breach of oral contract within the statutory period, as measured from even

### 2.	*The Rosses Sufficiently Alleged They Provided Proof of an Approval for a $1.8 Million Loan*

The Rosses allege the December 2017 Agreement gave them an option to purchase the property "on condition that [they] present proof of loan approval for the purchase amount of $1,800,000." The Rosses allege they satisfied this condition by presenting Monempour "with proof of the loan approval."[8] Monempour, however, contends Exhibit 1 to the operative complaint, a copy of the RanLife letter the Rosses gave Monempour as proof of their loan approval, established they did not satisfy the condition because it evinces only "a preliminary approval" of a loan for the purchase price, with "full and final approval" subject to several (as yet unfulfilled) conditions. This argument falls short.

Monempour construes the Rosses' description of the alleged condition too narrowly. The Rosses did not allege the condition required them to present proof of "final" loan approval, merely "loan approval." And, importantly, they do not purport to be quoting the terms of a written contract, or even the exact language allegedly exchanged orally between the parties. Thus, particularly when liberally construed with a view to substantial justice between the parties, the Rosses' description of the condition was general enough to permit a reasonable inference that providing preliminary loan approval satisfied the condition.

_____

the earliest breach they alleged, we do not reach the issue whether the sham pleading doctrine applies.

[8]	The parties appear to assume—and the operative complaint reasonably suggests—this condition continued to apply to the later agreements Monempour allegedly breached.

17

(See *Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 919 [in reviewing an order sustaining a demurrer, we "liberally construe the complaint 'with a view to substantial justice between the parties,' drawing 'all reasonable inferences in favor of the asserted claims'"]; *Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1143 [same].) Determining more precisely the sort of loan approval the parties intended as a condition to the December 2017 Agreement, as Monempour urges us to do, would raise factual questions inappropriate for resolving on demurrer. (See *Treadwell v. Nickel* (1924) 194 Cal. 243, 261 ["When the contract relied on is oral, its interpretation in the first instance is a question of fact to be determined by the jury."], disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010; *Esbensen v. Userware Internat., Inc.* (1992) 11 Cal.App.4th 631, 640 [determining an oral agreement's terms is a question for the jury]; *Southern Christian Leadership Conference v. Al Malaikah Auditorium Co.* (1991) 230 Cal.App.3d 207, 220 ["Where the lack of a written instrument reflecting every term of the agreement creates the dispute, the trier of fact must rely on extrinsic evidence to determine whether a contract existed and if so what it covered."]; *Smyth v. Tennison* (1914) 24 Cal.App. 519, 521 ["since the contract was oral, its interpretation in the first instance was a question of fact to be determined by the jury"].)

### 3. *The Rosses Sufficiently Alleged Estoppel To Raise the Statute of Frauds*

Because the contracts Monempour allegedly breached were for the sale of real property, they come within the statute of frauds, which ordinarily would make them invalid if not in writing. (Civ. Code, § 1624, subd. (a)(3); see *Reeder v. Specialized*

18

*Loan Servicing LLC* (2020) 52 Cal.App.5th 795, 801 [an "'agreement for the sale of real property or an interest in real property comes within the statute of frauds,'" and an "'agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds'"].) The Rosses, however, alleged the statute does not bar their cause of action for breach of oral contract under the doctrine of equitable estoppel.[9] Monempour contends the Rosses did not allege facts sufficient to justify applying that doctrine. But they did.

"To estop a defendant from asserting the statute of frauds, a plaintiff must show unconscionable injury or unjust enrichment if the promise is not enforced. [Citation.] "'The doctrine of estoppel has been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the

---

[9] Monempour incorrectly asserts the Rosses forfeited this argument by not raising it in their opening brief. It is true an "appellant is required to raise and support claims of error in its opening brief or they will be forfeited." (*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 380, fn. 13.) But because the trial court did not sustain Monempour's demurrer on this ground (and indeed ruled in the Rosses' favor on this point in the prior demurrer), the Rosses did not have to raise the issue in their opening brief; it was up to Monempour to raise the issue as an alternative ground for affirming the court's order. Which Monempour did in his respondent's brief, which in turn is why the Rosses appropriately discussed the issue in their reply brief. (See *ibid.* ["the trial court's failure to adopt grounds for summary judgment or summary adjudication urged by the respondent does not constitute an error from an appellant's point of view," and the "appellant therefore need not address them in its opening brief"].)

contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute."'" (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 944; accord, *Day v. Greene* (1963) 59 Cal.2d 404, 410; see *Tukes v. Richard* (2022) 81 Cal.App.5th 1, 25 ["'[t]he doctrine of estoppel to plead the statute of frauds may be applied where necessary to prevent either unconscionable injury or unjust enrichment'"].) "Whether the doctrine of equitable estoppel should be applied in a given case is generally a question of fact." (*Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1068; accord, *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1058.)

The Rosses alleged that, (1) relying on the December 2017 Agreement, they spent "time and money" applying for and obtaining preliminary approval for the $1.8 million purchase loan; (2) relying on the May 2018 Agreement, they spent additional time and money, including "paying appraisal fees and service fees," in securing the $500,000 loan on their Norwalk property; (3) under the July 10, 2018 Agreement they paid Monempour $8,000 in exchange for permission to continue living on the property until July 19, 2018 so they could consummate purchase of the property (with an extension to July 31 upon opening of escrow); and (4) relying on Monempour's promise, under the July 27, 2018 Agreement, to extend their purchase option to August 10, 2018 if they could prove they had access to $300,000 in liquid funds, they paid $3,000 to arrange a hard money loan for that amount against their Norwalk property. These allegations of detrimental reliance on Monempour's promises raise questions of fact, unsuitable for resolving on demurrer, regarding whether estoppel is warranted to avoid

unconscionable injury to the Rosses. (See *Tukes v. Richard, supra*, 81 Cal.App.5th at p. 26 [cases "reflect that allegations of substantial investment made by the plaintiff in reliance on the defendant's promise—whether in time, effort, or money—may permit the trier of fact to consider a claim of estoppel"]; see *id.* at pp. 25-26 [plaintiff sufficiently pleaded estoppel by alleging that, in reliance on defendant's promise, she spent considerable time and effort, to the exclusion of her continuing education, trying to find a buyer for a property].)

Monempour insists a promisee's "payment of money . . . is insufficient to take a contract out of the statute of frauds." The cases he cites, however, do not support that general proposition. Rather, they illustrate the narrower principle that paying money toward the purchase price, in partial performance of a promisee's obligation under a contract, is not sufficient detrimental reliance to warrant equitable estoppel to assert the statute of frauds. (See *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 557 [plaintiffs failed to establish estoppel to assert the statue of frauds because ("[w]e emphasize") the only action undertaken by them in reliance on the alleged agreement "was making the downpayment"]; *Oren Realty & Development Co. v. Superior Court* (1979) 91 Cal.App.3d 229, 235 [promisees' "part performance through their transmittal of checks in down payment" was insufficient to warrant estoppel]; *Cordano v. Ferretti* (1911) 15 Cal.App. 670, 673 ["it is the generally accepted rule that the payment of the purchase price . . . is not such a part performance of a parol agreement as will relieve the contract from the operation of the statute"].) This is because "'the party paying money "under an invalid contract . . . has an adequate

21

remedy at law.""" (*Secrest*, at p. 555; see *Anderson v. Stansbury* (1952) 38 Cal.2d 707, 716.)

None of the Rosses' alleged expenditures of money appears to have been a payment toward the property's purchase price. Indeed, most were payments to third parties for services connected with applying for and obtaining loans. In any event, as mentioned, the Rosses alleged they invested substantial time and effort, in addition to money, in reliance on their alleged oral agreements with Monempour. That was enough, at the pleading stage, to allege Monempour is estopped from raising the statute of frauds.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order sustaining Monempour's demurrer without leave to amend and enter a new order overruling it. The parties are to bear their costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

MARTINEZ, J.

22